**SILLS CUMMIS & GROSS P.C.**
Jordan E. Pace, Esq.
S. Jason Teele, Esq.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Tel. (973) 643-7000
*Proposed attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:<br><br>INTEGRATED DENTAL SYSTEMS LLC[1],<br><br>Debtor. | Case No. 20-21423 (JKS)<br>Chapter 11 |
| INTEGRATED DENTAL SYSTEMS LLC,<br><br>Plaintiff,<br><br>v.<br><br>MEGAGEN IMPLANT CO. LTD., R2GATE AMERICA INC. D/B/A MEGAGEN, JUN HEO, WILLIAM MARICIC, SCOTT MCNALLY, PAUL NURKO, MARTIN SANCHEZ and LINDSEY KEISTER,<br><br>Defendants. | Adv. Pro. No. 20-_____ (JKS) |

## **COMPLAINT**

Integrated Dental Systems LLC ("IDS"), by and through its attorneys, Sills Cummis &

Gross P.C., for its Complaint against defendants MegaGen Implant Co. Ltd., R2Gate America Inc.

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Integrated Dental Systems, LLC (2970). The location of the Debtor's service address is: 145 Cedar Lane, Englewood, NJ 07631.

7411555 v6

d/b/a MegaGen, Jun Heo, William Maricic, Scott McNally, Paul Nurko, Martin Sanchez, and Lindsey Keister (collectively, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

Defendants have engaged in a long-running, concerted, unfair, malicious, and tortious campaign to poach IDS's key sales employees and hijack IDS's customer relationships, goodwill, and sales. Through breaches of duty, misrepresentations, breaches of agreements, and other culpable acts, Defendants sought to destroy IDS and to recreate its business model and relationships in a manner that would improperly trade on IDS's hard-earned goodwill. IDS now seeks to stop Defendants' unfair competition and obtain redress for the damages caused to IDS's business, relationships, and goodwill.

## THE PARTIES

1.      IDS is a limited liability company organized and existing under the laws of the State of New Jersey with its principle place of business in Englewood Cliffs, New Jersey. IDS markets, sells, distributes, and supports dental implants throughout the United States.

2.      On October 7, 2020 (the "Petition Date"), IDS filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). IDS is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in IDS's chapter 11 case.

### MegaGen

3.      Defendant MegaGen Implant Co. Ltd. ("MegaGen") is an entity organized and existing under the laws of the Republic of Korea.

4.      MegaGen maintains an office and a mailing address in Englewood Cliffs, New Jersey.

5.      MegaGen does business, and has a presence, in the United States under various

names, including MegaGen America, R2Gate, and R2Gate America.

6.     MegaGen maintains a website and domain name registration in the United States with the uniform resource locator megagenamerica.com.  MegaGen registered or caused to be registered this domain name in or about November 2019.

7.     MegaGen purposefully directed the acts complained of herein at the United States.

### R2Gate

8.     Defendant R2Gate America Inc d/b/a MegaGen ("R2Gate"; together with MegaGen, the "Entity Defendants") is a domestic corporation organized and existing under the laws of the State of New Jersey with its principal place of business in Englewood Cliffs, New Jersey.

9.     R2Gate is an alter ego of MegaGen.

10.    R2Gate is a direct competitor of IDS.

### Jun Heo

11.    Defendant Jun Heo ("Heo") is a resident of the State of New Jersey.

12.    On or about May 14, 2018, IDS hired Heo as an employee.

13.    At the time IDS hired him, Heo was a non-permanent resident of the United States. In connection with hiring Heo as an employee, IDS sponsored Heo for an H-1B immigration visa. As part of the visa process, Heo signed paperwork confirming that he was employed by IDS.

14.    From the date of his hire through in or about May 2020, Heo was an employee of IDS.  During that period, IDS paid Heo, and Heo accepted from IDS, a salary.

15.    From the time IDS hired Heo until in or about May 2020, IDS believed that Heo was its employee and treated him as such.

16.    Upon information and belief, in or about June 2019, Heo became an employee of R2Gate.  Upon information and belief, Heo is an employee of both MegaGen and R2Gate.

17.    Heo is, and is holding himself out as, the "President" of "MegaGen USA", including through a LinkedIn profile.

### William Maricic

18.    Defendant William Maricic ("Maricic") is a resident of the State of Florida.

19.    IDS employed Maricic as an Implant Sales and Service Representative from in or about July 2016 until Maricic voluntarily resigned on or about May 15, 2020.

20.    During his employment with IDS, Maricic was responsible for sales, including contacting and directly interfacing with IDS's customers, throughout Florida.

21.    Upon information and belief, Maricic is currently an employee of MegaGen and R2Gate, with responsibility for sales in the same territory as when he worked for IDS.

22.    Maricic continues to hold himself out as "Regional Sales Manager" of "IDS/Integrated Dental Systems-MegaGen Implants," including through a LinkedIn profile.

### Scott McNally

23.    Defendant Scott McNally ("McNally") is a resident of the Commonwealth of Pennsylvania.

24.    IDS employed McNally as a Territory Manager since its acquisition of MegaGen USA, then as a Regional Manager from in or about July 2017, and then as National Sales Manager from in or about May 2018 until McNally voluntarily resigned on or about May 16, 2020.

25.    After his last promotion, McNally was responsible for overseeing IDS's sales operations throughout the United States.

26.    Upon information and belief, McNally is currently an employee of MegaGen and R2Gate, with similar responsibilities as when he worked for IDS.

### Paul Nurko

27.    Defendant Paul Nurko ("Nurko") is a resident of the Commonwealth of Virginia.

28.    IDS employed Nurko as an Implant Sales and Service Representative from in or about March 2015 until Nurko voluntarily resigned on or about May 15, 2020.

29.    During his employment with IDS, Nurko was responsible for sales, including contacting and directly interfacing with IDS's customers, throughout Virginia, Maryland, North Carolina, and the District of Columbia.

30.    Upon information and belief, Nurko is currently an employee of MegaGen and R2Gate, with responsibility for sales in the same territory as when he worked for IDS.

## Martin Sanchez

31.    Defendant Martin Sanchez is a resident of the State of California.

32.    IDS employed Sanchez as an Implant Sales and Service Representative since its acquisition of MegaGen USA until Sanchez voluntarily resigned on or about March 4, 2020.

33.    During his employment with IDS, Sanchez was responsible for sales, including contacting and directly interfacing with IDS's customers, throughout Southern California, Southern Nevada, and Hawaii.

34.    Upon information and belief, Sanchez is currently an employee of MegaGen and R2Gate, with responsibility for sales in the same territory as when he worked for IDS.

35.    After resigning from IDS and joining MegaGen and R2Gate, Sanchez held himself out as the "Director of Sales and Service, Western Region" of "MegaGen USA, Inc.," including through a LinkedIn profile.

## Lindsey Keister

36.    Defendant Lindsey Keister ("Keister"; together with Heo, Maricic, McNally, Nurko, and Sanchez, the "Individual Defendants") is a resident of the State of California.

37.    IDS employed Keister as an Implant Sales and Service Representative from in or about May 2018 until on or about August 1, 2020.

-5-

38.     During her employment with IDS, Keister was responsible for sales, including contacting and directly interfacing with IDS's customers, throughout the Midwest.

39.     Upon information and belief, Keister is currently an employee and/or sales agent of MegaGen and R2Gate, with responsibility for sales in the same territory as when she worked for IDS.

40.     Keister is holding herself out as, the "Regional Manager, KS, MO, NE, IA" for MegaGen.

## JURISDICTION AND VENUE

41.     This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

42.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

43.     Venue is proper before the Court pursuant to 28 U.S.C. § 1409.

44.     This Adversary Proceeding relates to the chapter 11 case styled, *In re Integrated Dental Systems, LLC*, Case No. 20-21423 (JKS), pending before the Bankruptcy Court.

45.     IDS consents to the entry of final orders or judgments in this Adversary Proceeding if it is determined that the Bankruptcy Court lacks such power under Article III of the United States Constitution.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.     Background**

46.     On or about May 5, 2013, IDS entered into an asset purchase agreement with MegaGen and an entity called MegaGen USA, Inc. ("MegaGen USA"). The parties agreed to an amended asset purchase agreement on or about October 24, 2013 (as amended, the "Asset Purchase Agreement"). Prior to the sale, MegaGen USA was MegaGen's subsidiary and operating entity in the United States.

47.     Pursuant to the Asset Purchase Agreement, IDS purchased all of the assets of MegaGen USA.

48.     The purchased assets included all of MegaGen USA's intellectual property, including the mark and trade name "MegaGen USA" and exclusive rights to the website megagen.us.

49.     On or about October 24, 2013, IDS and MegaGen entered into a supply and distribution agreement (as amended, the "Supply Agreement").   The Supply Agreement established an exclusive relationship wherein, *inter alia*, MegaGen was prohibited from selling, distributing, marketing, or promoting the following anywhere in the United States or Canada: (i) MegaGen-branded products; (ii) third party-branded products; or (iii) any products similar in style to MegaGen- or IDS-branded products.  The Supply Agreement also required MegaGen to supply and timely deliver to IDS the MegaGen products IDS ordered.

50.     IDS and MegaGen subsequently entered into amendments to the Supply Agreement.

51.     The initial term of the Supply Agreement continued through October 24, 2018, and then was automatically renewed for another five-year term.

52.     In or about August 2019, MegaGen purported to terminate the Supply Agreement. In response, IDS sent a notice of dispute under the Supply Agreement, which had the effect of staying the termination pending resolution of the parties' dispute.

53.     IDS and MegaGen continued to negotiate to settle their dispute amicably and to enter into a revised contractual arrangement.  IDS negotiated in good faith to settle the dispute while, as set forth below, MegaGen used the negotiations as cover for a plan to unfairly steal IDS's personnel and customers.  The parties continued to negotiate into May 2020.

**B.     MegaGen, R2Gate, and the Individual Defendants Engage in Wrongdoing**

54.     After purchasing the assets of MegaGen USA and commencing operations, IDS built a strong network of sales representatives and customers throughout the United States, which

resulted in significantly greater market share.  Sales increased approximately fivefold.

55.     During this time, however, MegaGen repeatedly engaged in bad faith conduct with respect to IDS, including:

       a.     refusing to replace failed dental implant inventory or to provide rebates due for products used for education, demonstrations, training sessions and sale samples

       b.     modifying the design of certain products, including making the modified products incompatible with parts in IDS's inventory, without informing IDS;

       c.     providing defective dental implants and then refusing to honor its own warranty obligations; and

       d.     refusing to exchange or provide credits for returned inventory;

56.     During the term of the Supply Agreement, MegaGen supplied a distributor located in or around Los Angeles, California, with MegaGen products and permitted the distributor to purchase, store, and sell MegaGen products in the United States.  IDS alerted MegaGen to this breach of the Supply Agreement on multiple occasions.  MegaGen did not deny its breach of the Supply Agreement.

57.     On or about June 5, 2019, while still employed by IDS, Heo incorporated R2Gate.  Heo serves as the registered agent of R2Gate.

58.     Upon information and belief, while still employed by IDS, Heo engaged in other activity to establish R2Gate as a direct competitor of IDS, including establishing an office for R2Gate in Englewood Cliffs, New Jersey, soliciting sales for R2Gate, and soliciting personnel for R2Gate.

59.     Upon information and belief, in or about November 2019, Heo attended a meeting at MegaGen's corporate headquarters in South Korea.  During this meeting, Heo presented a plan to hijack IDS's business by using R2Gate to directly compete with IDS and to steal IDS's customers and personnel through a series of misrepresentations, breaches of duties, breaches of agreements, and other acts of tortious interference and unfair competition.  MegaGen, R2Gate, and Heo agreed to this plan.

60.     Beginning in or about the second half of 2019 or the beginning of 2020, MegaGen began selling, distributing, marketing, and promoting MegaGen products throughout the United States.

61.     Beginning in or about the second half of 2019, MegaGen, R2Gate, Heo, and others acting at their direction, began a campaign to raid and/or poach most of IDS's sales representatives, sales managers, and other key personnel.  In order to induce IDS's personnel to leave IDS, MegaGen, R2Gate, Heo, and others acting at their direction, intentionally made material misrepresentations to IDS's personnel concerning, *inter alia*, IDS's inventory, commercial agreements, honoring of warranties, and more.

62.     As a result of these misrepresentations, Maricic, McNally, Nurko, and Sanchez resigned from IDS and joined MegaGen and/or R2Gate.

63.     Beginning in or about the second half of 2019, Defendants, and others acting at their direction, began a campaign to steal IDS's customers.

64.     In order to induce IDS's customers to cease or reduce orders from and business with IDS, Defendants, and others acting at their direction, intentionally made material misrepresentations to IDS's customers concerning, *inter alia*, IDS's inventory, commercial agreements, honoring of warranties, and more.  Misrepresentations made by Defendants to IDS's customers include false statements that IDS:

      a.     had ceased operations;

      b.     had little or no inventory of MegaGen products;

      c.     had no ability to fulfill orders due to supply and/or inventory limitations;

      d.     had terminated all or almost all of its sales staff; and

      e.     was not honoring warranties concerning MegaGen products.

65.     The foregoing statements were false when made and were known to be false by Defendants at the time each Defendant made or caused to be made the statement.

66.     While still employed by and representing IDS, Maricic, McNally, Nurko, and Sanchez informed some of IDS's customers that they were leaving IDS to join MegaGen and/or

R2Gate and that the customers would be able to obtain MegaGen dental implants from MegaGen and/or R2Gate at lower prices than from IDS. Maricic, McNally, Nurko, and Sanchez induced IDS's customers to cease or reduce orders from and business with IDS in favor of waiting until Maricic, McNally, Nurko, and Sanchez joined MegaGen and/or R2Gate.

67.     After Maricic, McNally, Nurko, and Sanchez resigned from IDS, they continued their campaign of misrepresentations to IDS's customers. With some of IDS's customers, Maricic, McNally, Nurko, and Sanchez intentionally did not disclose that they were representing MegaGen and/or R2Gate and not IDS. In doing so, they intended to mislead customers into believing that the customers were still dealing with IDS, thus unfairly trading on IDS's goodwill.

68.     Maricic continues to hold himself out as a sales employee of IDS. Sanchez holds himself out as having been an employee of "MegaGen USA, Inc" since 2009. The intended effect of these and other actions and misrepresentations by Defendants is to portray MegaGen and/or R2Gate as the continuation of IDS, thus unfairly trading on IDS's goodwill.

69.     With some of IDS's customers, Maricic, McNally, Nurko, and Sanchez misrepresented that IDS's remaining sales personnel were no longer servicing those customers and/or certain areas. Maricic, McNally, Nurko, and Sanchez misrepresented that they were the only available resource or sales representative contact for customers' MegaGen dental implant needs.

70.     As a direct result of the wrongdoing by Defendants described above, which was committed intentionally and throughout the United States, IDS lost a significant amount of sales, revenue, business, customer relationships, and goodwill.

71.     IDS entrusted Maricic, McNally, Nurko, Sanchez, and Keister with valuable demo equipment and samples, which were to be used exclusively in furtherance of IDS's business. Maricic, McNally, Nurko, Sanchez, and Keister have each failed to return the demo equipment and samples and have failed to account for the whereabouts or disposition of them. Upon information and belief, Maricic, McNally, Nurko, Sanchez, and Keister retained a significant amount of demo equipment and samples following their resignation from IDS and have been using

those items in furtherance of MegaGen's and/or R2Gate's business, in competition with IDS.

72.    IDS entrusted Maricic, Nurko, Sanchez, and Keister with other equipment, including laptops, which remain the property of IDS.  Maricic, Nurko, Sanchez, and Keister have each failed to return their IDS-issued laptops.  Upon information and belief, Maricic, Nurko, Sanchez, and Keister retained their IDS-issued laptops and are using them in furtherance of MegaGen's and/or R2Gates' business, in competition with IDS.

73.    IDS entrusted its sales employees with access to IDS's trade secrets consistent with the needs of their respective positions.

74.    Prior to entrusting any employee with its trade secrets, IDS requires the employee to review, understand, and acknowledge policies governing the confidentiality and non-disclosure of IDS's trade secrets.  IDS also requires its employees to keep trade secrets on password-protected systems and devices and to otherwise limit access to and safeguard trade secrets.

75.    IDS entrusted Maricic, McNally, Nurko, Sanchez, and Keister with its confidential, proprietary, and trade secret information including customer contact information, customer preferences, customer sales history, and internal sales information.  As National Sales Manager, McNally was also entrusted with access additional IDS trade secrets including transactional/corporate plans, product designs, and regulatory plans.

76.    Upon information and belief, prior to resigning from IDS and/or losing access to IDS's systems, each of Maricic, McNally, Nurko, Sanchez, and Keister copied some of IDS's trade secrets, which copies they then improperly retained after their employment with IDS ended.

77.    Upon information and belief, MegaGen, R2Gate, and Heo are and have been aware that Maricic, McNally, Nurko, Sanchez, and Keister wrongfully copied and retained IDS's trade secrets.

78.    Upon information and belief, each of Maricic, McNally, Nurko, Sanchez, and Keister, acting at the direction of and with the encouragement and cooperation of MegaGen, R2Gate, and Heo, have misappropriated IDS's trade secrets, disclosed IDS's trade secrets, and used IDS's trade secrets in furtherance of MegaGen's and R2Gate's business in competition with

IDS.

## FIRST CAUSE OF ACTION – BREACH OF DUTY OF LOYALTY
## AGAINST HEO, MARICIC, MCNALLY, NURKO, AND SANCHEZ

79.     IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

80.     As employees of IDS, each of Heo, Maricic, McNally, Nurko, and Sanchez owed IDS a duty of undivided loyalty.  Heo, Maricic, McNally, Nurko, and Sanchez were prohibited from acting in any manner inconsistent with their duty and were at all times during their employment with IDS bound to exercise utmost faith and loyalty to IDS.

81.     Heo, Maricic, McNally, Nurko, and Sanchez each breached their respective duties of loyalty to IDS by, *inter alia*, competing with IDS, aiding a competitor, soliciting sales for a competitor, making misrepresentations about IDS, and usurping IDS's sales opportunities.

82.     As a result of the breaches by Heo, Maricic, McNally, Nurko, and Sanchez, IDS has been damaged and continues to be damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION – FAITHLESS SERVANT
## AGAINST HEO, MARICIC, MCNALLY, NURKO, AND SANCHEZ

83.     IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

84.     IDS was unaware of the breach of their duties of loyalty owed to IDS by Heo, Maricic, McNally, Nurko, and Sanchez.  During the period each of Heo, Maricic, McNally, Nurko, and Sanchez was acting in breach of his duty of loyalty, IDS continued to provide compensation, including in the form of wages, salary, commissions, and benefits.

85.     IDS is entitled to disgorgement of the compensation provided to each of Heo, Maricic, McNally, Nurko, and Sanchez during each of their periods of disloyalty.

### THIRD CAUSE OF ACTION – AIDING & ABETTING A BREACH OF DUTY
### AGAINST HEO, MEGAGEN, AND R2GATE

86.     IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

87.     Heo, MegaGen, and R2Gate were each aware of the duties owed by Maricic, McNally, Nurko, and Sanchez to IDS, including the duty of loyalty.

88.     Heo, MegaGen, and R2Gate acted in concert and each encouraged, incited, compelled, and substantially assisted Maricic, McNally, Nurko, and Sanchez to breach their duties to IDS.

89.     As a result of the aiding and abetting breaches of duty by Heo, MegaGen, and R2Gate, IDS has been damaged and continues to be damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION – CONVERSION
### AGAINST MARICIC, MCNALLY, NURKO,
### SANCHEZ, KEISTER, MEGAGEN, AND R2GATE

90.     IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

91.     IDS entrusted to Maricic, McNally, Nurko, Sanchez, and Keister property belonging to IDS, including demo equipment, sample product, and laptops.  None of them returned the property to IDS before, upon, or after their resignation from IDS.

92.     Upon information and belief, Maricic, McNally, Nurko, Sanchez, and Keister, each acting with the knowledge and acquiescence of, and at the direction of, MegaGen and R2Gate, have used and are continuing to use IDS's property in furtherance of the business of MegaGen and R2Gate in competition with IDS.

93.     Maricic, McNally, Nurko, Sanchez, Keister, MegaGen, and R2Gate have improperly exercised dominion over IDS's property and continue to do so.

94.     IDS was and is entitled to the possession of its property, including the demo

equipment, sample product, and laptops that are in the possession of Maricic, McNally, Nurko, Sanchez, and Keister and subject to the control of MegaGen and R2Gate.

95.     Maricic, McNally, Nurko, Sanchez, Keister, MegaGen, and R2Gate have each deprived IDS of the use of that property that rightfully belongs to IDS.

96.     The willful actions of Maricic, McNally, Nurko, Sanchez, Keister, MegaGen, and R2Gate constitute a deprivation of IDS's right to possession of its property.

97.     Maricic, McNally, Nurko, Sanchez, Keister, MegaGen, and R2Gate have no right to the possession or use of IDS's property.

98.     As a result of the conversion of IDS's property by Maricic, McNally, Nurko, Sanchez, Keister, MegaGen, and R2Gate, IDS has been damaged and continues to be damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION – ACCOUNTING
## AGAINST MARICIC, MCNALLY, NURKO, SANCHEZ, AND KEISTER

99.     IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

100.    IDS entrusted to Maricic, McNally, Nurko, Sanchez, and Keister each property belonging to IDS, including demo equipment, sample product, and laptops.  This entrustment created a fiduciary relationship and a trust relationship between IDS and each of Maricic, McNally, Nurko, Sanchez, and Keister.

101.    None of them returned the property to IDS before, upon, or after their resignation from IDS.

102.    An accounting by each of Maricic, McNally, Nurko, Sanchez, and Keister of the IDS property entrusted to them by IDS is necessary to identify the IDS property in each of their possession that must be returned to IDS and/or the IDS property that was wasted or improperly disposed of by each of them.

## SIXTH CAUSE OF ACTION – TRADE LIBEL/DEFAMATION
## AGAINST ALL DEFENDANTS

103.    IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

104.    Defendants intentionally published statements to IDS's personnel, customers, and others concerning IDS's business, including its inventory, commercial agreements, honoring of warranties, and more.

105.    Defendants knew that these statements were false when made and/or acted with reckless disregard for the falsity of the statement.

106.    Defendants acted with malice and with the sole intention to harm IDS's business, reputation, goodwill, employee relationships, and customer relationships.

107.    As a result of Defendant's wrongdoing, IDS suffered special damages, including loss of revenue, loss of customer business and orders, loss of personnel, loss of goodwill, and reputational harm.

## SEVENTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE (CORPORATE RAIDING)
## AGAINST MEGAGEN, R2GATE, AND HEO

108.    IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

109.    IDS relies on the skills of its employees to run a successful business selling and supporting dental implants.

110.    IDS invested considerable resources and time training its employees, particularly its sales employees and the Individual Defendants, in order to benefit its business.

111.    IDS had and has a reasonable expectation of economic advantage and/or benefits accruing from its employment relationships with its employees, including deriving profit from its trained employees.

112.    MegaGen, R2Gate, and Heo were and are aware of IDS's expectation of economic advantage accruing from its training of its employees and its employment relationships.

113.    MegaGen, R2Gate, and Heo wrongfully and without justification interfered with IDS's expectation of economic advantage from its training of its employees and its employment relationships by:  (i) soliciting IDS's trained sales employees and other employees as part of a concerted plan to improperly interfere and harm IDS's business, reputation, goodwill, employee relationships, and customer relationships; (ii) making misrepresentations to IDS's personnel in order to induce the Individual Defendants and others to leave IDS and join MegaGen and/or R2Gate; (iii) making misrepresentations to IDS's customers in order to harm IDS's business and thereby compel the Individual Defendants and others to leave IDS and join MegaGen.

114.    Upon information and belief, these efforts, and the interference described above, by MegaGen, R2Gate, and Heo continue.

115.    MegaGen, R2Gate, and Heo have engaged in the interference described above intentionally, with malice, and without justification.

116.    The interference by MegaGen, R2Gate, and Heo has already damaged IDS by the loss of the Individual Defendants and is reasonably likely to cause further damage and deprive IDS of reasonably expected gain.

117.    As a result of the interference by MegaGen, R2Gate, and Heo, IDS has been damaged and continues to be damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (UNFAIR COMPETITION) AGAINST ALL DEFENDANTS

118.    IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

119.    IDS relies on the sales to its customers to generate revenue.

120.    IDS invested considerable resources and time cultivating relationships with customers and goodwill, as well as marketing, selling, distributing, and supporting sales to its customers.

121.    IDS had and has a reasonable expectation of economic advantage and/or benefits

accruing from its relationships with its customers, including deriving revenue from sales to customers.

122.  Defendants were and are aware of IDS's expectation of economic advantage accruing from its cultivation of customer relationships and goodwill and from its sales to customers.

123.  Defendants wrongfully and without justification interfered with IDS's expectation of economic advantage from its cultivation of customer relationships and goodwill from its sales to its customers by:  (i) breaching their respective duties of loyalty to IDS and/or aiding and abetting those breaches by, *inter alia*, interfering with sales to IDS's customers; (ii) making misrepresentations to IDS's customers concerning IDS's inventory, commercial agreements, honoring of warranties, and more; and (iii) otherwise unfairly interfering with IDS's customer relationships.

124.  Upon information and belief, these efforts, and the interference described above, by Defendants continue.

125.  Defendants have engaged in the interference described above intentionally, with malice, and without justification.

126.  The interference by Defendants has already damaged IDS by the loss of customer relationships, the loss of goodwill, and the loss of customer sales, and is reasonably likely to cause further damage and deprive IDS of reasonably expected gain.

127.  As a result of the interference by Defendants, IDS has been damaged and continues to be damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION – UNJUST ENRICHMENT
AGAINST ALL DEFENDANTS**

128.  IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

129.  During their respective periods of disloyalty, each of Maricic, McNally, Nurko, and Sanchez received benefits from IDS, including wages, salary, commissions, and benefits.  Maricic,

McNally, Nurko, and Sanchez have retained these benefits.

130.    Nurko, Sanchez, and Keister received for IDS demo equipment, sample product, laptops, and other items which they have retained and used in furtherance of the business of MegaGen and R2Gate.  MegaGen and R2Gate have thus retained the benefit of the materials provided by IDS.

131.    The retention by Defendants of the benefits provided by IDS is unjust, unfair, and inequitable due to their breaches of duty, conversion, and other wrongdoing.

**TENTH CAUSE OF ACTION – BREACH OF CONTRACT
AGAINST MEGAGEN**

132.    IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

133.    IDS entered into valid and enforceable agreements with MegaGen, including the Asset Purchase Agreement and the Supply Agreement (together, the "Agreements").

134.    The Agreements were each supported by adequate consideration.

135.    IDS duly performed all of its obligations under the Agreements.  All conditions precedent to MegaGen's performance under those agreements have occurred or been performed.

136.    MegaGen breached the Agreements by engaging in the conduct detailed above, including:  using the "MegaGen USA"; supplying MegaGen products in the United States to one or more distributors other than IDS; marketing, selling, distributing, otherwise trading in MegaGen products in the United States; and refusing to supply IDS with MegaGen products.

137.    As a result of MegaGen's breach of the Agreements, IDS has been damaged and continues to be damaged in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION – BREACH OF GOOD FAITH & FAIR DEALING
AGAINST MEGAGEN**

138.    IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

139.    MegaGen owed IDS a duty of good faith and fair dealing, which required MegaGen

to act in a manner that was at all times honest and faithful to the purposes of the Agreements and was consistent with the reasonable expectations of the parties.

140.    MegaGen engaged in the conduct complained of herein in bad faith and with the specific intent to deprive IDS of its reasonable expectations under the Agreements.

141.    As a result of MegaGen's bad faith acts and breach of the implied covenant of good faith and fair dealing, IDS has been damaged and continues to be damaged in an amount to be determined at trial.

### TWELFTH CAUSE OF ACTION – MISAPPROPRIATION OF TRADE SECRETS AGAINST ALL DEFENDANTS

142.    IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

143.    IDS maintains non-public, confidential trade secrets to use in its business, including customer contact information, customer preferences, customer sales history, internal sales information, transactional/corporate plans, product designs, regulatory plans, and the like.

144.    IDS takes steps to protect its trade secrets, including maintain a confidentiality policy that all employees must review, understand, and acknowledge.

145.    During the course of their employment with IDS, Maricic, McNally, Nurko, Sanchez, and Keister had access to IDS's trade secrets.

146.    Upon information and belief, prior to resigning from IDS and/or losing access to IDS's systems, each of Maricic, McNally, Nurko, Sanchez, and Keister copied some of IDS's trade secrets, which copies they then improperly retained after their employment with IDS ended.

147.    The copying and retention of IDS's trade secrets by Maricic, McNally, Nurko, Sanchez, and Keister was intentional and wrongful.

148.    Upon information and belief, MegaGen, R2Gate, and Heo are and have been aware that Maricic, McNally, Nurko, Sanchez, and Keister wrongfully copied and retained IDS's trade secrets.

149.    Upon information and belief, each of Maricic, McNally, Nurko, Sanchez, and

Keister, acting at the direction of and with the encouragement and cooperation of MegaGen, R2Gate, and Heo, have misappropriated IDS's trade secrets, disclosed IDS's trade secrets, and used IDS's trade secrets in furtherance of MegaGen's and R2Gate's business in competition with IDS.

150.    The actions of Defendants were in violation of the Defend Trade Secrets Act of 2016, the New Jersey Trade Secrets Act, and other statutes and common law.

151.    As a result of Defendants' misappropriation, IDS has been damaged and continues to be damaged in an amount to be determined at trial

**THIRTEENTH CAUSE OF ACTION – TURNOVER PURSUANT TO 11 U.S.C. § 542 AGAINST MARICIC, MCNALLY, NURKO, SANCHEZ, AND KEISTER**

152.    IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

153.    Maricic, McNally, Nurko, Sanchez, and Keister each are unlawfully in possession of significant amounts of valuable property of IDS, including demo equipment, sample product, and laptops.

154.    The property in the possession of Maricic, McNally, Nurko, Sanchez, and Keister was property of IDS on the Petition Date and continues to be property of IDS.

155.    The IDS property in the possession of Maricic, McNally, Nurko, Sanchez, and Keister is property of the IDS bankruptcy estate pursuant to 11 U.S.C. § 541.

156.    Maricic, McNally, Nurko, Sanchez, and Keister are required to turn over the IDS property in their possession to IDS pursuant to 11 U.S.C. § 542.

157.    Maricic, McNally, Nurko, Sanchez, and Keister failed or refused to return the IDS property in their possession upon, or after their resignation from IDS.

158.    The willful failure of Maricic, McNally, Nurko, Sanchez, and Keister to return the IDS property in their possession constitutes a violation of 11 U.S.C. § 542.

159.    The IDS bankruptcy estate has been damaged and continues to be damaged by the willful failure of Maricic, McNally, Nurko, Sanchez, and Keister to return the IDS property

unlawfully in their possession.

### FOURTEENTH CAUSE OF ACTION – VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362 AGAINST MARICIC, MCNALLY, NURKO, SANCHEZ, AND KEISTER

160.    IDS incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

161.    Maricic, McNally, Nurko, Sanchez, and Keister each are unlawfully in possession of significant amounts of valuable property of IDS, including demo equipment, sample product, and laptops.

162.    The property in the possession of Maricic, McNally, Nurko, Sanchez, and Keister was property of IDS on the Petition Date and continues to be property of IDS.

163.    Maricic, McNally, Nurko, Sanchez, and Keister failed or refused to return the IDS property in their possession upon, or after their resignation from IDS. Nurko, Sanchez, and Keister continue to possess the property.

164.    Despite demand made on and after the Petition Date, Maricic, McNally, Nurko, Sanchez, and Keister have failed or refused to return the property of IDS in their possession.

165.    On the Petition Date, the automatic stay of 11 U.S.C. § 362 became effective.

166.    The automatic stay prohibits, among other things, any act to obtain possession of property of the estate or the exercise of control over property of the estate.

167.    The continued possession by Maricic, McNally, Nurko, Sanchez, and Keister of property of the IDS bankruptcy constitutes a willful violation of 11 U.S.C. § 362.

### PRAYER FOR RELIEF

**WHEREFORE**, IDS prays for and respectfully requests judgment:

A.    Enjoining Maricic, McNally, Nurko, Sanchez, and Keister to return all IDS property, including demo equipment, sample product, and laptops, to IDS;

B.    Directing Maricic, McNally, Nurko, Sanchez, and Keister to provide an accounting for all IDS property entrusted to them;

C.      Directing Maricic, McNally, Nurko, Sanchez, and Keister to turn over all IDS property in their possession.

D.      Enjoining Defendants from interfering with IDS's prospective economic advantage, including its employee relationships, customer relationships, goodwill, and sales;

E.      Enjoining Defendants from retaining, misappropriation, disclosing, or using IDS's trade secrets;

F.      Sanctioning Maricic, McNally, Nurko, Sanchez, and Keister for willfully violating the automatic stay.

G.      Awarding IDS compensatory, special, consequential, and punitive damages in an amount to be determined;

H.      Awarding IDS its attorneys' fees and costs;

I.      Awarding IDS interest; and

J.      Awarding such other and further relief as the Court deems just and proper.


                                        Respectfully submitted,

Dated: October 12, 2020                 **SILLS CUMMIS & GROSS P.C.**

                                        _/s/ S. Jason Teele_
                                        S. Jason Teele, Esq.
                                        Jordan E. Pace, Esq.
                                        The Legal Center
                                        One Riverfront Plaza
                                        Newark, New Jersey 07102
                                        Tel. (973) 643-7000

                                        _Attorneys for Plaintiff_